UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x
PAUL P. VIANA, JR.,

        Plaintiff,        **MEMORANDUM AND ORDER**
                                        16-CV-02842 (FB)

  -against-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

---------------------------------------------------x

*Appearances:*
*For the Plaintiff:*                          *For the Defendant:*
CHARLES E. BINDER               BRIDGET M. ROHDE
Law Offices of Harry J. Binder and     Acting United States Attorney
Charles E. Binder, P.C.                  Eastern District of New York
60 East 42nd Street, Suite 520         271 Cadman Plaza East, 7th Floor
New York, New York 10165            Brooklyn, New York 11201

                                                  By:   KATHLEEN A. MAHONEY
                                                        Assistant U.S. Attorney

**BLOCK, Senior District Judge:**

      Paul P. Viana, Jr. ("Viana"), who formerly worked as a file clerk at a law firm, seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits under the Social Security Act (the "Act"). Both parties move for judgment on the pleadings. For the

reasons stated below, the Commissioner's motion is denied, Viana's motion is granted, and the case is remanded for the calculation of benefits.

**I.**

In October 2011, Viana filed an application for Disability Insurance Benefits. He alleged disability, as of June 17, 2011,[1] from back pain. The Social Security Administration (the "SSA") denied his application, and he had a hearing before an Administrative Law Judge ("ALJ"). In a decision dated April 10, 2013, the ALJ held that Viana was not disabled. The Appeals Council granted review and, on May 14, 2014, remanded for a new hearing and decision, reasoning that the ALJ had failed to assess the effect of Viana's obesity, to adequately evaluate his ability to perform existing jobs, and to evaluate testimony submitted by Viana's wife.

On remand, Viana appeared at a second hearing before the same ALJ, and, on December 12, 2014, the ALJ again held that Viana was not disabled. Applying the familiar five-step evaluation process,[2] the ALJ determined that: (1) Viana had not

---

[1] Viana initially alleged an onset date of July 13, 2009, but, at his hearing, amended it to June 17, 2011.

[2] Social Security Administration regulations establish a five-step process for evaluating disability claims. The Commissioner must determine "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre v. Colvin*, 748 F.3d 146, 150 (2d Cir. 2014) (citing

2

engaged in substantial gainful activity from July 13, 2009, through December 31, 2015, the date he was last insured for disability benefits under the Act; (2) his lumbar disc disease, disc herniation, and lumbar spondylolisthesis[3] constituted severe impairments; but (3) they did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Viana had the residual functional capacity ("RFC") to perform sedentary work with certain restrictions. Applying this RFC to the remaining steps, the ALJ determined that (4) Viana was unable to perform his past relevant work as a file clerk, but (5) there were jobs existing in significant numbers in the national economy that Viana could perform, namely credit card clerk, surveillance system monitor, and charge account clerk.

The Appeals Council denied Viana's request for review, rendering final the ALJ's decision to deny benefits. Viana timely sought judicial review.

## II.

---

20 C.F.R. § 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)(v)). The burden of proof is on the claimant in the first four steps, but shifts to the Commissioner at the fifth step. *Id.* At the fifth step, the Commissioner "need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (citing 20 C.F.R. § 404.1560(c)(2)).

[3] "Spondylolisthesis is a condition in which a bone (vertebra) in the spine moves forward out of the proper position onto the bone below it." N.I.H., U.S. Nat'l Library of Medicine, *Spondylolisthesis*, MedlinePlus.gov (last visited Oct. 12, 2017) https://medlineplus.gov/ency/article/001260.htm.

3

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). Viana argues that (1) the ALJ failed to properly weigh the medical opinion evidence; (2) the ALJ failed to properly evaluate Viana's credibility; and (3) the Appeals Council failed to properly consider new medical evidence.

### A. RFC Determination

The Court agrees that the ALJ failed to properly weigh the medical evidence and failed to properly determine Viana's credibility. As a result, the ALJ's RFC determination was not supported by substantial evidence.

The ALJ determined that Viana had the RFC to perform sedentary work with the following restrictions: (1) carry 20 pounds frequently and 20-50 pounds occasionally; (2) sit for 2 hours at a time for a total of 8 hours during a workday, with the option to change positions at will; (3) walk 1 hour at a time for 2 hours total during the workday; (4) stand 1 hour at a time for a total of 2 hours during the work day; (5) perform postural activities, such as bending and kneeling, occasionally; and (6) never climb ladders or scaffolds or be exposed to vibrations or extreme heat. *See*

Administrative Record ("AR") at 56.

The ALJ's RFC determination was based on Viana's medical history, his hearing testimony, and medical opinions of multiple physicians.

### 1. Medical History

Viana's medical history contains extensive documentation of his impairment. In July 2009, an ambulance took Viana to the emergency room for back pain after he was unable to get out of bed. An x-ray and MRI showed multiple spinal abnormalities. *See* AR at 431, 433-34. Treating physician Dr. Sebastiano wrote several letters stating that Viana was not fit for work during a period before the alleged onset date. In August 2009, an EMG/NCV study showed evidence of left lumbosacral radiculopathy. *See id.* at 514-19.

On October 17, 2011 (after Viana's alleged onset of disability), an MRI showed multiple disc bulges, anterolisthesis with suspected spondylolysis,[4] disc osteophyte complex,[5] and a small central herniation. *See id.* at 511. Later MRI results from December 2014 showed additional findings, including thecal sac deformity and mild

---

[4] Spondylolysis is a crack in part of the vertebra. *Spondylolysis and Spondylolysthesis*, KnowYourBack.org (last visited Oct. 17, 2017), https://www.spine.org/KnowYourBack/Conditions/DegenerativeConditions/SpondylolysisandSpondylolysthesis.aspx. Anterolisthesis is forward slippage of a vertebrae over the one beneath it. Cedars-Sinai, *Anterolisthesis*, www.cedars-sinai.edu (last visited Oct. 17, 2017), https://www.cedars-sinai.edu/Patients/Health-Conditions/Anterolisthesis.aspx.

[5] Disc osteophyte complex involves the formation of bone spurs on multiple vertebrae; these bone spurs may compress the nerves in the spinal cord, causing pain, numbness, and tingling. Laser Spine Institute, *Understanding disc osteophyte complex* (last visited Oct. 17, 2017), https://www.laserspineinstitute.com/back_problems/spinal_bone_spurs/disc_complex/.

to moderate left foraminal narrowing without thecal sac compression. *See id.* at 591.

On October 26, 2011, Viana's treating neurologist, Dr. Azamy, reviewed the MRI results and diagnosed lumbar spine spondylolisthesis and lumbosacral radiculopathy. He prescribed a Medrol pack and noted that Viana was taking Tramadol and Celebrex.[6] Dr. Azamy also instructed Viana to perform exercises and avoid lifting heavy objects.

The record contains extensive documentation of treatment by Dr. Azamy. At a follow-up appointment in December 2011, Dr. Azamy found that Viana had moderate lumbar paraspinal muscle tenderness and decreased range of motion in the lumbar spine. He prescribed physical therapy and directed Viana to continue with Tramadol and Advil. Dr. Azamy made similar findings in January and March 2012 with the additional recommendation that Viana avoid heavy lifting. Follow-up visits in June and September 2012; November 2013; and February, May, August, and November 2014 led to findings and recommendations that were essentially unchanged. In April 2012, Dr. Azamy recommended a range of conservative treatment and noted that Viana refused surgical intervention because he was afraid. *See* AR at 495.

In a "Lumbar Spine Impairment Questionnaire," Dr. Azamy indicated that

---

[6] Dr. Fuchs testified at Viana's hearing that a Medrol pack treats inflammation and Tramadol treats pain. AR at 115-16.

Viana experienced limited range of motion, tenderness, muscle spasms, an abnormal gait, sensory loss, reduction in reflexes, muscle atrophy, muscle weakness, and lower back pain. *See id.* at 504-05. Dr. Azamy checked a box indicating that Viana's "symptoms and functional limitations" were reasonably consistent with his impairments. *Id.* at 505.

Treating orthopedic surgeon Dr. Sultan examined Viana in October 2013, found a reduced range of motion in his back and muscle atrophy in his left leg, and confirmed Viana's diagnosis of lumbar disc disease. Dr. Sultan wrote that Viana was "aware that surgical intervention may possibly help him, however, he [was] trying to avoid any surgical intervention because the surgery does not guarantee any favorable results." *Id.* at 577.

### 2. Credibility of Viana's Hearing Testimony

Viana testified as follows. He could not work because of his back pain, which was worse with bending. He could lift no more than 10 pounds, sit or stand no more than 20-30 minutes at a time, walk 5-6 blocks at a time, and used a cane to walk pursuant to a prescription from Dr. Azamy. He drove his wife to the supermarket but was otherwise unable to help with household chores, and he required his wife's help to get out of bed and get dressed. *See* AR at 96-102.

The ALJ found that Viana's "medically determinable impairments could reasonably be expected to cause functional limitations," but that his "statements

7

concerning the intensity, persistence and limiting effects of these limitations are not entirely credible because the evidence as a whole does not support them." *See id.* at 57-58.

An ALJ must consider seven factors when a claimant's subjective complaints suggest greater severity than can be shown by objective medical evidence.[7] The ALJ did not expressly consider these seven factors. Although the ALJ acknowledged some relevant evidence, such as Viana's daily activities, medications, and other treatment for pain, he did not consider what bearing that evidence had on the credibility of Viana's testimony. The ALJ instead concluded that Viana's testimony was not supported "based on the record and the testimony of the [Commissioner's non-examining] medical expert [Dr. Fuchs]." AR at 59.

Substantial evidence does not support the ALJ's credibility determination. First, the ALJ stated that Viana's testimony was not credible "based on the record," but he did not describe what parts of the record supposedly contradicted Viana's testimony. On the contrary, the ALJ correctly stated that "there [was] evidence of limitations in the record" and described some of the medical records documenting

---

[7] The seven factors set forth in the SSA regulations include: (i) claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating or aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (vi) any measures the claimant uses or has used to relieve pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3).

8

Viana's spinal impairment. *Id.* at 58. As described above, Viana's medical records contain extensive documentation of his impairment and doctors' attempts to treat his pain. The ALJ appeared to ignore much of this evidence, including Dr. Azamy's and Dr. Sultan's findings of muscle atrophy and later MRI results from 2014 with new findings compared to Viana's 2011 MRI, which was the only one mentioned by the ALJ. The ALJ thus failed to consider "all of the relevant medical and other evidence," and his credibility determination therefore "cannot stand." *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010) (citing 20 C.F.R. § 404.1545(a)(3)).

In any event, the determination that Viana's testimony is not credible because it is inconsistent with the objective medical evidence contradicts the SSA regulations' recognition that "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(3). And, for the reasons discussed below, Dr. Fuch's testimony was insufficient to undermine Viana's testimony.

The ALJ's credibility determination was therefore not supported by substantial evidence.

### 3. Opinion of Treating Physicians

Dr. Azamy estimated that Viana could sit no more than two hours in an eight-hour work day, stand or walk for no more than one hour in an eight-hour work day,

9

and occasionally lift or carry no more than 10 pounds. *Id.* at 506-07. Dr. Azamy further stated that Viana was unable to continuously stand, walk, or sit; that he would need to get up and move around every hour for 10 or 15 minutes; that he could not push, pull, kneel, bend, or stoop; and that his impairments would cause him to be absent from work more than 3 times a month. *Id.* at 507-09. Dr. Sulton generally repeated the same restrictions, with one exception: in an eight-hour work day, Viana could sit for no more than 2-3 hours and stand or walk for no more than 1-2 hours. *Id.* at 578-84.

The ALJ rejected Dr. Azamy's opinion on the grounds that "the treatment received by the claimant, which has not been significant, does not support the opinion that the claimant cannot perform even sedentary work," AR at 59-60, and the "generally negative" clinical findings, as interpreted by two of the Commissioner's experts, "do no [sic] support such severe limitations," *id.* at 60. Similarly, the ALJ gave "limited weight" to Dr. Sultan's opinion "in light of the generally negative findings on physical examinations, and the conservative treatment of the claimant." *Id.* Although a treating physician's opinion on a claimant's RFC is not entitled to controlling weight, *see* 20 C.F.R. § 416.927(d)(2)-(3), the ALJ's decision to reject Dr. Azamy's and Dr. Sultan's opinions was not supported by substantial evidence.

First, the ALJ's characterization of the clinical findings as "generally negative" was unsupported by substantial evidence. True, there were some negative clinical

findings. For example, in November 2013, Dr. Azamy found that Viana had full strength in his upper and lower extremities, normal sensory responses and coordination, and a gait within normal limits. *See, e.g.*, AR at 588. However, the ALJ did not explain why those specific findings were inconsistent with Viana's subjective complaints of pain or with the opinions of Viana's treating physicians, nor did he point to any opinion evidence to support such a view. Moreover, Dr. Azamy consistently repeated his diagnosis of lumbar spinal disc herniation and lumbar spine "strain/sprain," directed Viana to continue with medications and exercises, and instructed him to follow up in three months. *Id.* Many of Dr. Azamy's reports included notations of "lumbar paraspinal muscle tenderness," *id.* at 585-86, and, as stated above, MRI and x-ray results showed evidence of spinal impairments. Thus, the clinical findings were far from "generally negative."

Second, by rejecting the opinion of Viana's treating physicians on the basis that Viana received conservative treatment, the ALJ "[e]ssentially . . . imposed [his] notion that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered." *Shaw v. Chater*, 221 F.3d 126, 134–35 (2d Cir. 2000). Conservative treatment does not necessarily indicate that Viana's impairments were mild. *Cf. id.* at 133 ("Just because plaintiff's disability went untreated does not mean he was not disabled."). In any event, the record shows that Viana's physicians discussed surgery and injections with Viana but that he refused them because he was

11

afraid and not confident that they would succeed.

Third, the opinions of the Commissioner's non-examining consultants were insufficient to undermine the opinions of Viana's treating physicians and do not constitute substantial evidence in support of the ALJ's RFC determination. Commissioner's non-examining consultant Dr. Fuchs testified by phone at Viana's hearing. Portions of his testimony are nearly incomprehensible because of an apparent connection problem; however, he admitted that Viana's lumbosacral impairment could cause significant limitations in his ability to perform work-related tasks. *See* AR at 105-07. Dr. Fuchs also stated that the spinal conditions shown in Viana's MRI "may or may not" have caused his pain. *Id.* at 113. Conclusory statements of doubt by a non-examining consultant about a claimant's symptoms do not constitute substantial evidence of his RFC. The SSA regulations acknowledge that "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(3).

The opinion of Commissioner's non-examining consultant Dr. Hancock was an outlier: his estimate of Viana's RFC far exceeded any other opinion in the record. Based solely on his impression that Viana's treatment record was "sparse" and did not include "epidurals, nerve blocks, nerve root injections, . . . etc.," Dr. Hancock opined that Viana was "limited to a wide range of light work," could sit and stand for 6 hours per day, could walk for 7 hours per day without interruption, and could sit, stand, or

walk for a total of 6 hours in an eight-hour work day.[8] AR at 561-63. The ALJ acknowledged that Dr. Hancock's opinion was questionable "in light of the objective findings such as MRI and EMG/NCV," but nonetheless gave it "significant weight as it was generally supported by the record." *Id.* at 59. The ALJ's contradictory conclusions that Dr. Hancock's testimony was both inconsistent with the record and "generally supported" by it strain credulity. In any event, Dr. Hancock was incorrect. The record of Viana's impairment and treatment was far from "sparse"— as summarized above, it contains extensive documentation of Viana's treatment by his treating physicians. MRI results over a period of several years show additional findings in later years, suggesting that Viana's spinal condition continued to deteriorate from the alleged onset date through the date last insured. Against such a consistent record of impairment, Dr. Hancock's observation that Viana opted out of some forms of treatment does not undermine Viana's subjective complaints of pain or the opinions of Viana's treating physicians. More importantly, it does not constitute substantial evidence of Viana's RFC.

The ALJ's failure to support his RFC determination with substantial evidence warrants remand.

### B. Disposition

"Where the record provides persuasive proof of disability and a remand for

---

[8] Dr. Hancock did not explain how Viana could walk for a total of 7 hours without interruption if he was unable to walk for more than 6 hours in an eight-hour work day.

further evidentiary proceeding would serve no purpose, the court may reverse and remand solely for the calculation and payment of benefits." *Henningsen v. Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 272 (E.D.N.Y. 2015). Thus, where

> reversal "is based solely on the [Commissioner's] failure to sustain his burden of adducing evidence of [plaintiff's] capability for gainful employment and the [Commissioner's] findings that [plaintiff] can engage in 'sedentary' work is not supported by substantial evidence, no purpose would be served by remanding the case for a rehearing . . . ."

*Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000) (quoting *Balsamo v. Chater*, 142 F.3d 75, 82 (2d Cir. 1998)).

Here, as discussed above, the ALJ's RFC determination was not supported by substantial evidence. Viana's testimony and his treating physicians' opinions, which were supported by medical records, showed that Viana was unable to sit for more than three hours, at the most. Sedentary work "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day . . ." *Curry*, 209 F.3d at 123. Viana was therefore not capable of performing sedentary work.

Because reversal here is based on the Commissioner's inability to sustain his burden and substantial evidence does not support the ALJ's RFC determination, the Court remands for the sole purpose of calculating an award of benefits. This disposition is "particularly appropriate" given the amount of time Viana has diligently and unsuccessfully sought benefits. *Curry*, 209 F.3d at 124. His application has been pending for over 6 years, and it has been over three years since the Appeals Council

remanded the case for further proceedings. The Commissioner has had multiple chances and ample time to reach the proper result. Thus, remand solely to calculate an award of benefits is especially warranted where, as here, "a remand for further evidentiary proceedings (and the possibility of further appeal) could result in substantial, additional delay." *Id.*; *see also Finnegan v. Berryhill*, __ F. Supp. 3d __, 2017 WL 4990565, at *6 (E.D.N.Y. Oct. 30, 2017) (collecting cases involving delays ranging from four years to thirty years and stating, "Those involved in the process should all take a hard look at ways to minimize this burden on disability applicants, who are among our most vulnerable citizens and cannot afford to wait years or sometimes decades to receive relief for their urgent needs.").

## III.

For the foregoing reasons, the Commissioner's motion is denied, Viana's motion is granted, and the case is remanded for calculation of an award of benefits.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
November 3, 2017